UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SABRINA PAGAN AND MARIA OLIVARES,<br><br>        Plaintiffs,<br><br>v.<br><br>EDUARDO RIVERA (individually and in his official capacity as a police officer of the City of Jersey City), MICHAEL KELLY (in his official capacity as Chief of Police for the City of Jersey City), AND JOHN DOES 1-50 (being fictitious names),<br><br>        Defendants. | Civ. No. 19-7176 (KM) (ESK)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

     Plaintiffs allege that on May 13, 2018, they were having breakfast together when Sabrina Pagan received a phone call followed by threatening text messages from her ex-boyfriend, Brian Miller. Miller had previously been violent towards Ms. Pagan, and she already had a protective order against him. Pagan was concerned, based on Miller's text messages, that Miller may have broken into her home and was waiting to attack her. Accordingly, plaintiffs went to a police station in Jersey City to seek assistance. Officer Eduardo Rivera of the City of Jersey City police department was dispatched to Ms. Pagan's home. Upon arriving, however, Officer Rivera required Pagan to first go into her home to retrieve a copy of the protective order against Miller and then required her to reenter her home to retrieve her identification. Miller was evidently inside; after Pagan entered her home the second time, Miller attacked her, and she began screaming for assistance. Officer Rivera is alleged to have

remained in his vehicle without coming to the aid of Ms. Pagan. Ms. Olivares ran into the home to help Ms. Pagan. Miller then attacked and injured Olivares.

Pagan and Olivares filed this action against Officer Rivera and Chief of Police Michael Kelly. Chief Kelly filed an answer to the complaint. (DE 6) Officer Rivera filed a motion to dismiss (DE 21), which is the subject of this Opinion. Rivera moves to dismiss the amended complaint (DE 4) for failure to state a claim under a "state-created danger" theory and for failure to provide the required pre-suit notice of state-law tort claims under the New Jersey Tort Claim Act. The plaintiffs, Sabrina Pagan and Maria Olivares, have filed an opposition to Rivera's motion to dismiss. (DE 29)

For the reasons stated in this opinion, I will deny Officer Rivera's motion to dismiss the amended complaint.

## I. Summary[1]

### A. Background

For the purposes of a motion to dismiss, the facts alleged in the amended complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014). The allegations have not yet been tested by any fact finder. I summarize the allegations as follows.

In April 2018, Sabrina Pagan "obtained an Order of Protection against a former boyfriend, Brian Miller, as the result of his physical violence against her." (AC ¶ 7) Unfortunately, this did not stop the harassing conduct by Mr. Miller. (*Id.* ¶ 8)

On May 13, 2018, Maria Olivares and her daughter drove to Ms. Pagan's residence at 947 Summit Avenue, Jersey City, New Jersey, and parked outside

---

[1] Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

"AC" = The amended complaint filed by plaintiffs. (DE 4)

2

Ms. Pagan's house. (*Id.* ¶¶ 6, 9–10) As they ate breakfast at a nearby restaurant, Ms. Pagan received a call from Mr. Miller in which he threatened Pagan and also threatened to break the windshield of Olivares's car. (*Id.* ¶ 10) The threats were such that it seemed to plaintiffs that Miller had broken into Ms. Pagan's home, something he had done previously, and was watching plaintiffs. (*Id.* ¶ 11) Accordingly, plaintiffs drove to their local police station to request assistance with dealing with Miller. (*Id.* ¶ 12) A police officer told Ms. Pagan that they would send an officer to the home and that she should wait for the car outside the house. (*Id.* ¶ 13)

Officer Rivera[2] "eventually" showed up at the home, at which point "Plaintiffs explained the situation in detail, including the fact that [Ms. Pagan] had an Order of Protection against Miller, the fact that Miller had been physically violent towards her, the fact that Miller had broken into Pagan's home before, and the fact that he was sending texts that morning indicating that he was watching her." Pagan showed Officer Rivera the text messages Miller sent that day. (*Id.* ¶¶ 14–16) While Pagan and Rivera were speaking, Pagan received another text message, which she showed to the officer, that indicated that Miller knew Ms. Pagan had called the police. (*Id.* ¶ 17)

After hearing this information, Officer Rivera ordered Ms. Pagan to enter her home, unaccompanied, and retrieve the order of protection entered against Miller. (*Id.* ¶ 18) Ms. Pagan protested out of fear that Mr. Miller was hiding in her home, but gave in. (*Id.* ¶ 19) She retrieved the order without incident. (*Id.* ¶ 21) Officer Rivera then requested that Ms. Pagan again enter the home to retrieve her identification. (*Id.* ¶ 22) Again, Pagan protested out of fear that Miller had been watching and would have had the chance to hide in the home or nearby. (*Id.* ¶ 23) Officer Rivera ignored this concern and Ms. Pagan reentered the home to obtain her ID. (*Id.* ¶¶ 24–25)

---

[2]   Initially, plaintiffs named as a defendant Officer Edwin Perez, believing that he was the officer that responded. As discussed below, plaintiffs subsequently amended the complaint to name Officer Rivera, once they were informed that he had been the officer on the scene.

This time, while Miller was inside the home, Miller violently attacked Pagan, shoving her down a flight of stairs. (*Id.* ¶¶ 25–26) Ms. Olivares heard Pagan's screams and screamed for Officer Rivera to get out of his car and assist. (*Id.* ¶¶ 27–28) Officer Rivera did not get out of his vehicle. Olivares therefore ran into the house to help Ms. Pagan. She too was attacked by Mr. Miller, who shoved her down the stairs. (*Id.* ¶¶ 29– 31) Miller then fled. Plaintiffs were treated at the hospital and released. (*Id.* ¶¶ 32, 34)

On or about June 18, 2018, plaintiffs filed a timely notice of tort claim against the City of Jersey City and Officer Edwin Perez. (The plaintiffs initially, and apparently mistakenly, believed that the responding officer was Perez, not Rivera.) (*Id.* ¶ 5) On February 4, 2019, plaintiffs filed their complaint in the Superior Court of New Jersey, Law Division, Hudson County, naming Officer Perez and Chief of Police Michael Kelly as defendants. (*See* DE 1) On February 27, 2019, defendants removed the action to this federal court, where it was assigned to Chief Judge Linares. (*Id.*)

On March 6, 2019, plaintiffs filed their amended complaint, which dropped Officer Perez as a defendant and in his place named Officer Rivera. (*See* AC) Plaintiffs assert claims under the Civil Rights Act, 42 U.S.C. § 1983 (Count I) and the New Jersey Civil Rights Acts, N.J. Stat. Ann § 10:6-1, *et seq.* (Count II). They also assert New Jersey state law tort claims: intentional infliction of emotional distress (Count III), negligent infliction of emotional distress (Count IV), and negligence (Count V).

On April 17, 2019, Chief of Police Kelly filed his answer. (*See* DE 6) The case was reassigned to Judge Vazquez upon Judge Linares's retirement. (DE 8)

On August 2, 2019, a summons was issued as to Officer Rivera (DE 15), and on October 10, 2019, Officer Rivera moved to dismiss plaintiffs' amended complaint. (DE 21) Officer Rivera asserts that the amended complaint fails to state a claim under a state-created danger theory of liability and that plaintiffs' common law claims fail for failure to comply with the notice provisions of the New Jersey Tort Claims Act. (*See* DE 21)

In response to Rivera's motion to dismiss, on November 13, 2019, plaintiffs filed a notice of tort claim naming Eduardo Rivera. On November 16, 2019, plaintiffs moved for leave to file a late notice of claim in the Superior Court of New Jersey. (*See* DE 36-2) Plaintiffs asserted in support of their motion that they had confused the relevant officer, Officer Rivera, with another officer, Perez, who had subsequently assisted in the arrest of Miller. Although plaintiffs moved for leave more than a year after the accident and thus outside of the time limits outlined in N.J. Stat. Ann. § 59:8-9, they asserted that their motion for leave was timely due to the tolling effect of the discovery rule. (DE 36-2 at 12–13) Moreover, they argued that there was no prejudice here because the police department was put on notice of the claims and were the ones in the best position to know that plaintiffs had misidentified the relevant officer. (*Id.* at 14–16) New Jersey Superior Court Judge Costello granted the motion for late filing of the notice of claim on February 14, 2020. (DE 42)

On December 30, 2019, the case was reassigned to me. (DE 39)

## II. Discussion

### A. Legal standard

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

### B.   Count One – 18 U.S.C. § 1983

Plaintiffs' Section 1983 claim seeks to hold Officer Rivera liable for substantive due process constitutional violations under a "state-created danger" theory of liability. They allege that his action or inaction exposed them to a danger that they otherwise would not have encountered. When a federal right is infringed an official acting under color of state law, the Civil Rights Act of 1871 provides a remedy:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 allows a party who has been deprived of rights, privileges, or immunities secured by the Constitution to seek damages and injunctive relief. *See id.*

Section 1983 is not in itself a source of substantive rights; it provides a remedy for violations of rights protected by other federal statutes or by the U.S. Constitution. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).

Therefore, in evaluating a § 1983 claim, a court must first "identify the exact contours of the underlying right said to have been violated" and determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Id.* (*citing Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 841 n.5 (1998)).

A prima facie case under § 1983 requires a plaintiff to demonstrate that: (1) a person deprived her of a federal right; and (2) the person who deprived her of that right acted under color of state law. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo,* 446 U.S. 635, 640 (1980)). Element (2)—whether Officer Rivera acted under color of state law—is not disputed by the parties. The parties' dispute arises as to element (1)—whether plaintiffs were deprived of a federal right.

Whether element (1) has been sufficiently pled with respect to plaintiffs' "state-created danger" theory depends on whether plaintiffs have satisfied the Third Circuit's four-part test as outlined in *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996). In *Kneipp,* the Third Circuit held that in order to state a viable claim where the state had created a danger a plaintiff must show:

(1) that the harm ultimately caused to the plaintiff was foreseeable and fairly direct;

(2) the state actor acted in willful disregard for the plaintiff's safety;

(3) there was some relationship between the state and the plaintiff; and

(4) the state actor used his authority to create an opportunity for danger that otherwise would not have existed.

*Id.* at 1208.

Element 2 requires not just negligence, but that "a state actor acted with a degree of culpability that shocks the conscience." *K.W. by & through White v. Se. Pennsylvania Transportation Auth.*, 760 F. App'x 104, 107 (3d Cir. 2019) (citing *Sanford v. Stiles*, 456 F.3d 298, 304 (3d Cir. 2006)); see also *M.J.G. v. Sch. Dist. of Philadelphia,* 774 F. App'x 736, 744 (3d Cir. 2019) ("While the state actor's behavior must always shock the conscience, the specific level of

culpability required to shock the conscience increases as the time to deliberate decreases. Where state actors have an opportunity to deliberate and make 'unhurried judgments,' deliberate indifference is sufficient." (internal citations and quotations omitted)). Element 4 "of these conjunctive elements reflects the fact that the substantive component of the Due Process Clause 'is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without due process of law. . . .'" *K.W. by & through White*, 760 F. App'x at 107 (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 126 (1992)).

Applying these four elements here, I find that plaintiffs have sufficiently asserted facts in the amended complaint to support their § 1983 claims and will deny Officer Rivera's motion to dismiss with respect to the 1983 claims.

### i. Count One – Ms. Pagan

Defendant contends that Ms. Pagan has failed to plead facts that establish the first and second prongs of the *Kneipp* test. (DE 21 at 18) That is, Officer Rivera concedes *arguendo* at this stage that there was a relationship between Ms. Pagan and Officer Rivera (element 3) and that Officer Rivera affirmatively used his authority in such a way as to create a danger (element 4). However, Officer Rivera contends that foreseeability (element 1) and willful disregard for Ms. Pagan's safety (element 2) have not been sufficiently alleged. Plaintiff Pagan responds that it was highly likely Mr. Miller was nearby, and that if required to enter the apartment she would be attacked. Officer Rivera, she alleges, acted with reckless indifference to this foreseeable harm. (DE 29 at 47–53).

Construing the allegations as I must in plaintiffs' favor, I find that Ms. Pagan has alleged sufficient facts to state a "state-created danger" theory under Section 1983 against Officer Rivera. I confine my analysis to the disputed first (foreseeability) and second (reckless disregard) elements.

As to element 1, the question is whether the harm to Ms. Pagan was foreseeable and direct. "To adequately plead foreseeability ..., we require a plaintiff to allege ... an awareness of risk that is sufficiently concrete to put the [state] actors on notice of the harm." *Henry v. City of Erie*, 728 F.3d 275, 282 (3d Cir. 2013) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 238 (3d Cir. 2008)).

Officer Rivera cites *Morse v. Lower Merion School District*, 132 F.3d 902 (3d Cir. 1997). (DE 21-3 at 19) In *Morse*, an individual who was mentally disturbed entered a school through a door that was left unlocked, and fatally shot a teacher. The court held that the harm was not foreseeable because defendants were not warned and were unaware that this person was on campus. *Morse* does not apply here. Ms. Pagan has alleged facts sufficient to suggest that that Officer Rivera was actually aware of Mr. Miller's violent tendencies and potential presence at the home. For example, on the day in question, Ms. Pagan asserts that she had received a threatening phone call from Miller, and continued to receive threatening messages from him. (*See* AC ¶¶ 8, 10, 16) She reported these facts to the police when she sought their assistance. Ms. Pagan informed Officer Rivera that Mr. Miller had been physically abusive towards her, and had previously broken into her apartment. (*Id.* ¶¶ 12–15) Confirming Rivera's knowledge of Miller's violence toward Pagan is his specific request that she bring him the previously-obtained order of protection. Pagan explained to Officer Rivera why she had a credible fear that Miller was nearby. She told Rivera Officer about the threatening phone call she had received that morning. She showed Rivera text messages she was receiving from Miller even as they spoke outside the apartment, messages that suggested that Mr. Miller knew she had called the police and implied he was nearby or even in the home. (*Id.*) The text message threatened to damage Olivares's car, implying that Miller had the area under surveillance and knew the car was currently parked there. Officer Rivera was thus aware of Mr. Miller's violent

tendencies and it was entirely foreseeable that, should Miller be in the home, he would again attack Ms. Pagan.

Ms. Pagan has also established at the motion to dismiss stage that her injuries were "fairly direct." "[T]he plaintiff must plausibly allege that state officials' actions 'precipitated or w[ere] the catalyst for' the harm for which the plaintiff brings suit." *Henry*, 728 F.3d at 285 (quoting *Morse*, 132 F.3d at 910).

Defendant suggests that as a factual matter, Ms. Pagan's injuries were purely the result of a third-party, Mr. Miller. That can probably be said of most such cases; if a police officer had thrown the plaintiff downstairs, there would be no need to invoke the state-created danger theory. Relatedly, defendant argues that Mr. Miller might have been successful in harming Ms. Pagan regardless of police intervention.

This argument minimizes the allegations in the complaint. Ms. Pagan asserts that she sought the assistance of the police to deal with an individual who was known to be violent towards her. And, at least inferably, her summoning the police further enraged Miller.

The officer, dispatched to deal with Pagan's well-founded fear of violence at the hands of an abusive partner, was slow to react and indeed allegedly acted so as to increase the danger. He first required Ms. Pagan to prove that she had an order of protection. To retrieve it, the officer required her to enter the home, while the officer—allegedly for no good reason—remained outside. Luckily, she retrieved the order without incident. The officer, unsatisfied, imposed a second precondition to taking her complaint seriously. He required her to produce identification, which again required her to enter the home. At the time, Pagan had informed the officer of Miller's violent history toward her; even as they spoke, she was receiving angry text messages from Miller that implied he knew she had called the police and could be nearby or in the home. The officer allegedly declined to accompany her to retrieve her identification from the apartment. But for the officer's refusal to protect her while she followed the officer's instructions, says Pagan, she would not have reentered the home alone and been attacked. (*See* AC ¶¶ 37, 42)

10

At the complaint stage these factual allegations are sufficient to satisfy element 1 of the state-created danger doctrine, the requirement of a "foreseeable and fairly direct" harm.

Element (2)—that the state actor acted in willful disregard for the plaintiff's safety—has been interpreted as requiring that the official acted in a manner that "shocks the conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833 (1998). Whether conduct shocks the conscience

> depends on the particular circumstances of the case. *Walter*, 544 F.3d at 192 (quoting *Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir.1999)). Where state officials are asked to make split-second decisions in "'a hyperpressurized environment,' an intent to cause harm is usually required...." *Id.* (quoting *Sanford v. Stiles*, 456 F.3d 298, 306 (3d Cir. 2006)). By contrast, "where officials are afforded the luxury of a greater degree of deliberation and have time to make 'unhurried judgments,' deliberate indifference is sufficient to support an allegation of culpability." *Phillips*, 515 F.3d at 240–41 (emphasis in original). The Third Circuit has recognized a middle-ground standard in other circumstances:
>
>> [W]here the circumstances require a state actor to make something less exigent than a "split-second" decision but more urgent than an "unhurried judgment," i.e., a state actor is required to act "in a matter of hours or minutes," a court must consider whether a defendant disregarded a "great risk of serious harm rather than a substantial risk."
>
> *Id.* at 241 (quoting *Sanford*, 456 F.3d at 306). The Third Circuit has described this middle-ground standard as: "gross negligence and arbitrariness—the state actor must 'consciously disregard[ ] a great risk of serious harm.'" *Walter*, 544 F.3d at 193.

*Van Orden v. Borough of Woodstown*, 5 F. Supp. 3d 676, 683 (D.N.J. 2014).

Defendant Rivera argues that this incident required him to make a decision under "hurried deliberation" and that therefore the highest level of culpability, intent to cause harm, must be shown. (DE 21-3 at 22) Plaintiff Pagan replies that a lower standard of culpability applies because Officer Rivera had the benefit of time and was not required to

11

act under pressure when he required Ms. Pagan to reenter the home twice to retrieve documents. Therefore, says Pagan, the court should apply either the lowest standard (deliberate indifference) or the middle-ground approach (gross negligence and arbitrariness). The facts as pled, she argues, would meet either standard. (DE 29 at 51–53)

Accepting the facts in the amended complaint as true, and drawing all reasonable inferences in favor of Ms. Pagan, I find that the highest standard—intent to cause harm—would not apply here. There was no time pressure. So long as Ms. Pagan was actually with the officer, she presumably was not, or should not have been, in any danger from Miller. The complaint, as amended, suggests that the officer did not respond quickly to Ms. Pagan's distress call. When he arrived, he required her to enter the home twice, unaccompanied, to retrieve evidence of her identity and the order of protection. It would have taken the officer no longer to accompany her into the house than it took for him to wait outside. In short, the complaint faults the officer for *lacking* any sense of urgency. Moreover, the amended complaint sets forth facts adequate to support a claim that Rivera "disregarded a great risk of serious harm" when he required Ms. Pagan to enter her home twice without accompanying her or ascertaining whether Miller was inside, and failed to respond to Pagan's screams as she was being assaulted.

I am cognizant, of course, that at this stage the allegations are just that—allegations. For purposes of a motion to dismiss, however, I am required to accept them as true. Accordingly, Officer Rivera's motion to dismiss Count 1 as it pertains to Ms. Pagan is denied.

### ii. Count One – Ms. Olivares

Count 1, insofar as it is asserted by Ms. Olivares, presents a closer case. Nevertheless, I find that the allegations are sufficient at this stage to set forth the four elements of the *Kneipp* test.

As to element 1, it was foreseeable that Officer Rivera's failure to intervene would endanger not only Ms. Pagan, but also Ms. Olivares. *See, e.g.*, *Gremo v. Karlin*, 363 F. Supp. 2d 771, 784 (E.D. Pa. 2005)("[A] harm is foreseeable when a state actor has actual awareness, based on concrete information, of a risk of harm to an individual ... such that the actor is on notice that his or her act or failure to act significantly enhances the risk of harm."). Olivares had accompanied Pagan when she complained to the police; she was allied with Pagan against her abuser, who had apparently taken umbrage at the police having been summoned; and she was at the premises with Pagan.

Regarding element two, whether Rivera's behavior "shocks the conscience," Ms. Olivares asserts that Rivera's decision to send Pagan into the home unprotected—already discussed above—is what caused her harm. As to Olivares in particular, it was Rivera's failure to respond to Pagan's screams that required Olivares to, in effect, do Rivera's job by running into the building to rescue Pagan. On these facts, Rivera could be found to be not just negligent or even grossly negligent, but to have shown deliberate indifference or a reckless disregard of plaintiffs' demonstrated need for police assistance.

Again, these are allegations that remain to be proven. If true, however, these facts set forth conduct that would shock the conscience. *See County of Sacramento v. Lewis*, 523 U.S. 833 (1998).

Third, the "relationship" requirement of element 3 has been sufficiently alleged. According to *Kneipp*, the relationship requirement "contemplates some contact such that the plaintiff was a foreseeable victim of [the] defendant's acts in a tort sense." *Kneipp*, 95 F.3d at 1209 n. 22. The criterion that there be "some contact" between a state actor and a plaintiff embodies the requirement that the danger created by a state actor cannot be directed toward the "public at large," but instead must be particular to a plaintiff. Here, the amended complaint sufficiently alleges that there was contact between Rivera and Olivares. Pagan and Olivares together sought police assistance when Miller

began threatening Pagan and threatening to damage Olivares's car, indicating that his anger was not confined to Pagan. Olivares stood there speaking with Rivera before Pagan was ordered to enter the home, she was with Rivera when Miller was apparently lurking close by, and she was interacting with Rivera when Pagan was being attacked. (AC ¶¶ 10–15, 28–31) These allegations meet the "some contact" criteria; with respect to these events, it cannot be said that Olivares stood in the shoes of a member of the general public. She was a particular individual who, with Pagan, sought the assistance of Officer Rivera to prevent an identified danger to which she, along with Pagan, was exposed. *See Schieber v. City of Philadelphia*, No. CIV. A. 98-5648, 1999 WL 482310, at *4 (E.D. Pa. July 9, 1999).

Fourth, I likewise find that the amended complaint asserts that Officer Rivera used his position of authority to create a danger to Olivares. Officer Rivera asserts essentially that it was Olivares's act of entering the home that created the danger to her. But "'[i]f the state puts a man in a position of danger ... and then fails to protect [her], it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown [her] into a snake pit.'" *Morrow*, 719 F.3d at 177 (quoting *D.L. ex rel. L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1374 (3d Cir. 1992), and *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982)). In plaintiffs' version, it was Rivera's inaction that forced Olivares into the role of rescuer; indeed, at that moment it was obvious to Olivares, and inferably was obvious to Rivera, that Pagan was under attack.[3] The allegations are sufficient to establish element 4.

Accordingly, I **deny** Officer Rivera's motion to dismiss as it relates to Count 1 insofar as it is alleged by Ms. Olivares.

---

[3]  This analysis is in accord with traditional tort doctrines. "Danger invites rescue," and a duty of care may therefore extend to a foreseeable rescuer. *See Wagner v. Int'l Ry. Co.*, 232 N.Y. 176, 133 N.E. 437 (N.Y. 1921) (Cardozo, J.).

### C.     Count Two – N.J. Stat. Ann. § 10:6-1, *et seq.*

The second count alleges a violation of state constitutional protections pursuant to a state-created-danger theory under the New Jersey Civil Rights Act ("NJCRA"). The NJCRA, N.J. Stat. Ann. § 10:6-2(c), provides that "[a]ny person who has been deprived of any substantive rights, privileges or immunities secured by the Constitution or laws of this State by a person acting under color of law, may bring a civil action for damages."

The New Jersey State Legislature, when it enacted the NJCRA, intended it to parallel 42 U.S.C. § 1983, and sought to incorporate existing § 1983 jurisprudence. *Perez v. Zagami*, 218 N.J. 202, 515 (2014); *see also RaCapt. Mos v. Flowers*, 429 N.J. Super. 13, 23 (App. Div. 2012) (stating that NJCRA was "modeled on the federal civil rights law which provides for a civil action for deprivation of civil rights." (citations omitted)). Thus, the NJCRA is construed nearly identically to Section 1983.

The parties have not suggested any distinction between the Count Two claims under NJCRA and their Count One counterparts under 42 U.S.C. § 1983. Therefore, for the reasons outlined in Section II.B, *supra*, defendant's motion to dismiss Count Two is **denied**.

### D.     State Tort Claims

Officer Rivera moves to dismiss Counts III through V, the state-law tort claims, for failure to provide the pre-suit notice required by the New Jersey Tort Claims Act. As noted above, on June 18, 2018, Plaintiffs filed a notice of tort claim against the City of Jersey City. That notice inadvertently named the wrong police officer—Officer Perez rather than Officer Rivera. Officer Rivera contends that this error deprived him of the pre-suit notice to which he was personally entitled. (DE 21 at 27–33) Plaintiffs respond that they timely filed their notice of claim, placing the City and police hierarchy on notice, and that their initial misidentification of the officer was immaterial, particularly in light

of their later cure of the error in state court. (*See* DE 29 at 60–61)[4] For the reasons stated below, I will deny Officer Rivera's motion to dismiss insofar as it seeks to dismiss Counts III through V for lack of pre-suit notice under the NJTCA.

The NJTCA imposes certain procedural prerequisites to the filing of a lawsuit. "[N]o action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J. Stat. Ann. § 59:8-3. Such a pre-suit notice of claim must contain certain facts about the claimant and the nature of the injury; it must be filed with the department or agency involved in the alleged wrongful act; and it must be signed by the claimant. *Id.* §§ 59:8–4, 8–6, 8–7.

Section 59:8-8 imposes a 90-day time limit on filing a notice if the claim is one for personal injury. A "judge of the Superior Court" may, within his or her discretion, permit a claimant who fails to comply with the 90-day deadline to "file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby." *Id.* § 59:8-9; *see also Ganame v. Univ. Hosp.*, No. A-2087-17T2, 2019 WL 1828308, at *3 (N.J. Super. Ct. App. Div. Apr. 25, 2019) ("But N.J.S.A. 59:8-9 states that at the discretion of a Superior Court judge, a late notice of claim may be filed . . . ."). Such an application must be

---

[4]    After briefing was completed, plaintiffs sought leave to file a two-page surreply addressing Rivera's arguments concerning the notice of tort claim. (DE 34). Plaintiffs were granted leave to file a two-page brief (DE 35), and ultimately filed their surreply with the state-court briefing as an attachment. (DE 36)

Officer Rivera objects to the filing of the state-court briefing as an attachment because, says Officer Rivera, the court only granted plaintiffs leave to file a two-page surreply. (DE 37). That application is rejected; whether or not they are attached, the court may take judicial notice of public records such as court filings on a motion to dismiss. They are noted, not for the truth of any factual assertions therein, but for their existence and legal effect—here, that the plaintiffs applied for, and Judge Costello granted, relief from the filing deadline as of a certain date. *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). *See generally* Fed. R. Evid. 201.

"supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within" 90 days. *Id.*

As noted above, on June 18, 2018, plaintiffs filed a notice of tort claim naming the City of Jersey City and inadvertently naming the wrong police officer. After this action was filed, on March 5, 2019, counsel for Chief Kelly informed plaintiffs that they had misidentified the relevant officer. (*See* DE 29 at 60) The next day, plaintiffs filed an Amended Complaint naming the correct officer, Officer Rivera. (*See* AC) At the time, however, plaintiffs did not file a new notice of claim naming Rivera. After Officer Rivera moved to dismiss, in November 2019, plaintiffs sought to remedy this omission by filing a notice of tort claim naming Officer Rivera and by seeking leave to file a late notice of claim from the Superior Court of New Jersey, pursuant to the procedures of N.J. Stat. Ann. § 59:8-9, cited *supra*. (*See* DE 36-2 (Plaintiffs' briefing before the Superior Court seeking leave to file a late notice of tort claim)) On February 14, 2020 the Honorable Mary K. Costello of the Superior Court of New Jersey granted the application. Citing, *inter alia,* the discovery tolling doctrine, she entered an order allowing plaintiffs to file a late notice of tort claim naming Officer Rivera and she accepted for filing, *nunc pro tunc*, the November 2019 notice of claim filed as to Officer Rivera. (*See* DE 42) Judge Costello held that "the name of the officer involved is more of a clerical error than anything that is material or that creates prejudice especially in light of the parallel action in federal court." (*Id.* at 2)

That order of Judge Costello, a "judge of the Superior Court" to whom the decision is entrusted under the statute, is dispositive. N.J. Stat. Ann. § 59:8-9. I will therefore deny Officer Rivera's motion to dismiss Counts III to V based on the plaintiffs' failure to file a notice of claim.

## III. Conclusion

For the reasons set forth above, I will deny Officer Rivera's motion to dismiss the amended complaint. (DE 21)

An appropriate order follows.

Dated: April 29, 2020

/s/ Kevin McNulty

_____
**Kevin McNulty**
**United States District Judge**