## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **SABRINA PAGAN AND MARIA OLIVARES,**<br><br>　　　　　　**Plaintiffs,**<br><br>**v.**<br><br>**EDUARDO RIVERA (individually and in his official capacity as a police officer of the City of Jersey City), MICHAEL KELLY (in his official capacity as Chief of Police for the City of Jersey City), AND JOHN DOES 1-50 (being fictitious names),**<br><br>　　　　　　**Defendants.** | Civ. No. 19-7176 (KM) (ESK)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

　　Defendant Officer Eduardo Rivera of the Jersey City Police Department seeks partial reconsideration of this Court's April 29, 2020 Opinion and Order (DE 47, 48)[1], which denied Rivera's Motion (DE 21) to Dismiss the Amended Complaint (DE 4) of plaintiffs Sabrina Pagan and Maria Olivares. For the reasons provided herein, Rivera's motion for reconsideration (DE 64) is granted in part, in that the Court will modify the grounds of its prior ruling; the relief requested, however, is denied.

---

[1]　　Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

　　　　"DE" = Docket entry number in this case.

　　　　"Am. Compl." = Plaintiffs' Amended Complaint (DE 4)

## I.   Summary

The parties' familiarity with the facts is assumed. Plaintiffs allege that on May 13, 2018, Sabrina Pagan received a phone call followed by threatening text messages from Brian Miller, her ex-boyfriend. (Am. Comp. ¶¶ 10-11.) Because of Miller's violent history towards Pagan,[2] she believed from the text messages that Miller might have broken in to her home and was waiting there to attack her. (Am. Compl. ¶ 11.) Consequently, Pagan and Maria Olivares went to a police station in Jersey City and asked for assistance. (Am. Compl. ¶ 12.)

The Jersey City Police Department dispatched Officer Rivera to Pagan's home. (Am. Compl. ¶¶ 13-14.) After arriving, despite Pagan's showing Rivera the threatening text messages and explaining Miller's violent history towards her, Rivera (1) required Pagan to enter her home to retrieve a copy of the Order of Protection against Miller; and (2) after she provided that Order, requiring Pagan to reenter her home to retrieve her identification. (Am. Compl. ¶¶ 18-24.)

As Pagan had suspected, Miller was inside her home. (Am. Compl. ¶ 25.) After Pagan, at Rivera's direction, enter her home the second time, Miller assaulted Pagan and threw her down a flight of stairs. (Am. Compl. ¶¶ 25-26.) While Pagan called for help, Rivera allegedly remained in his vehicle without coming to her aid. (Am. Compl. ¶¶ 27-29.) Because Rivera did not leave the police car, Olivares ran into Pagan's home to assist her. (Am. Compl. ¶ 29.) Miller then attacked and injured Olivares, as well. (Am. Compl. ¶¶ 30-31.)

On June 18, 2018, plaintiffs filed a timely notice of tort claim against the City of Jersey City and Officer Edwin Perez. (Plaintiffs initially, and apparently mistakenly, believed that Perez, not Rivera, had been the responding officer.) (Am. Compl. ¶ 5.) On February 4, 2019, plaintiffs filed their complaint in the Superior Court of New Jersey, Law Division, Hudson County, naming Officer Perez and Chief of Police Michael Kelly as defendants. (*See* DE 1.) Later that

---

[2]     Pagan obtained an Order of Protection against Miller in or about April 2018. (Am. Compl. ¶ 7.)

month, on February 27, 2019, defendants removed the action to federal court.
*(See* DE 1.)

Plaintiffs filed their amended complaint against Rivera and Kelly
(dropping Officer Perez) on March 6, 2019. (DE 4.) On April 17, 2019, Kelly filed
an answer to the amended complaint. (DE 6.)[3] On October 10, 2019, Rivera
moved to dismiss the amended complaint (DE 21) for (1) failure to state a claim
under a "state-created danger" theory and (2) failure to provide Rivera pre-suit
notice of state-law tort claims under the New Jersey Tort Claim Act ("NJTCA").[4]

As relevant here, I denied Rivera's motion to dismiss the state-law tort
claims (Count 3-5) for lack of pre-suit notice under the NJTCA. (DE 47 at 15-
17.) I observed that while Section 59:8-8 of the NJTCA imposes a 90-day time
limit on filing a notice of claim, a "judge of the Superior Court" may within his
or her discretion, permit a claimant who fails to comply with the 90-day
deadline to "file such notice at any time within one year after the accrual of his
claim provided that the public entity or the public employee has not been
substantially prejudiced thereby." (DE 47 at 16-17; *see also* N.J. Stat. Ann. §
59:8-9.)

I also highlighted that, although the plaintiffs filed a timely notice of tort
claim inadvertently naming the wrong police officer, plaintiffs attempted to
rectify this error (in November 2019) by filing a notice of tort claim naming
Rivera and by seeking leave from the Superior Court of New Jersey, pursuant
to Section 59:8-9, to file a late notice of claim. (DE 47 at 17; *see also* DE 36-2
(Plaintiffs' briefing before the Superior Court seeking leave to file a late notice of
tort claim).)

I noted that on February 14, 2020, the Honorable Mary K. Costello of the
Superior Court granted plaintiffs' application and entered an order allowing the
plaintiffs to file a late notice of tort claim naming Rivera, and accepted for

---

[3]    The case was reassigned to Judge Vazques upon Judge Linares's retirement.
(DE 8.)

[4]    The case was reassigned to me on December 30, 2019. (DE 39.)

filing, *nunc pro tunc*, the November 2019 notice of claim filed as to Rivera. (*See* DE 42). Judge Costello observed that "the name of the officer involved is more of a clerical error than anything that is material or that creates prejudice in light of the parallel action in federal court." (DE 42 at 2.)

I held that the order of Judge Costello, a "judge of the Superior Court" to whom the decision to permit the filing of a late notice of claim is entrusted under the NJTCA, was dispositive. Based on Judge Costello's order, I denied Officer Rivera's motion to dismiss the state-law claims for lack of an effective notice under the NJTCA. (DE 47 at 17; *see also* N.J. Stat. Ann. § 59:8-9.)

Events have intervened. On March 29, 2021, the Superior Court of New Jersey, Appellate Division, filed a decision vacating Judge Costello's order. Officer Rivera now seeks reconsideration, citing the Appellate Division's decision as affecting the legal grounds upon which this Court relied in denying Rivera's motion initially. (*See* DE 64-2 at 7, 18, DE 64-8.)

## II.   Discussion

### a.  Legal Standard

In the District of New Jersey, motions for reconsideration are governed by Local Civil Rule 7.1(i). Reconsideration is an "extraordinary remedy," to be granted "sparingly." *NL Indus. Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996). A party seeking to persuade the court that reconsideration is appropriate bears the burden of demonstrating one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (internal citation omitted); *see also Crisdon v. N.J. Dep't of Educ.*, 464 F. App'x 47, 49 (3d Cir. 2012) ("The purpose of a motion for

reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence.") (internal citation omitted).

A motion for reconsideration may be granted when an intervening change in the law plainly affects the original judgment entered by the Court. *Troncone v. Velahos*, No. CIV. 10-2961, 2012 WL 3018061, at *2 (D.N.J. July 23, 2012). Upon reconsideration, the Court may determine the extent to which the newly issued decision from a court of controlling authority governs the issue, and whether the Court's prior ruling should be affirmed, vacated, or modified. *Pittston Co. v. Sedgwick James of New York, Inc.*, 971 F. Supp. 915, 919 (D.N.J. 1997). The motion for reconsideration may still be granted to ensure that new law has been adequately considered, even if the ultimate result is affirmance of the prior decision. *Pelham v. United States*, 661 F. Supp. 1063, 1065 (D.N.J. 1987).

### b. Rivera's Motion for Reconsideration

On reconsideration, Rivera submits that there has "been an intervening change on the legal grounds" upon which this Court relied on in denying his motion for dismissal of the state-law tort claims for failure to comply with the NJTCA's notice provisions. (DE 64-2 at 18.) Because the Appellate Division vacated the Superior Court's February 14, 2020 order granting Plaintiffs' application to file a late notice of claim, Rivera asserts that the Superior Court's order no longer serves as "a valid basis upon which to deny Officer Rivera's motion to dismiss." (DE 64-2 at 18.) Accordingly, Rivera argues that this Court should vacate and reverse its prior Order and Opinion denying Rivera's motion to dismiss the state-law claims. (DE 64-2 at 19, 28.)

I granted relief based on Judge Costello's order. Rivera is correct that the Appellate Division's decision undermines this Court's reason for denying Rivera's motion to dismiss the state-law claims, and therefore constitutes an intervening change in the controlling law. This Court therefore grants the motion to reconsider the prior ruling. I will now do so in light of the Appellate Division's decision.

### c. Reconsideration of Rivera's Motion for Dismissal of Plaintiffs' State-Law Claims

On reconsideration, I find that the result remains the same: Rivera's motion for dismissal of the state-law claims for failure to provide pre-suit notice under the NJTCA must be denied. The New Jersey Supreme Court in *Velez v. City of New Jersey*, 18 N.J. 284, 296 (2004), and federal and New Jersey case law interpreting that decision, demonstrate that Rivera was not denied anything to which he was entitled under the NJTCA.[5]

The New Jersey Supreme Court in *Velez* reiterated the requirement that, under the NJTCA, a public entity must be given pre-suit notice of claims arising from intentional and negligent conduct. *Id.* at 294. However, *Velez* rejected any requirement that written notice need also be given to *the public employees* involved in the alleged tort*:*

> [W]e reject the State's invitation to extend the Act's notice requirements to mandate that written notice also be given to public employees. Although we note that the better practice is for a potential plaintiff to give notice to both the public entity and the public employee, N.J.S.A. 59:8–8 only requires that notice be given to the public entity. If the Legislature had intended to require that

---

[5]  Rivera argues in his Reply brief that I cannot consider *Velez* and related case law because the plaintiffs failed to make this argument when opposing Rivera's original motion to dismiss and are thus estopped. (DE 66 at 5.) The whole foundation of Rivera's motion for reconsideration, however, is that things have changed; he cannot have it both ways. The Third Circuit has held that on a motion for reconsideration, "where a previously ignored legal theory takes on new importance due to an intervening development in the law, it is appropriate … to exercise … discretion to allow a party to revive that theory." *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 n. 39 (3d Cir. 1995) (internal quotation marks omitted); *see also Bryant v. New Jersey Dep't of Transp.*, 998 F. Supp. 438, 443 (D.N.J. 1998).

Judicial estoppel is an extreme remedy and I find that plaintiffs have exhibited "bad faith" or asserted a "position irreconcilably inconsistent with one … asserted in a prior proceeding.*" Saudi Basic Indus. Corp. v. Exxon Mobil Corp.*, 401 F. Supp. 2d 383, 389-90 (D.N.J. 2005). Because the issue was controlled by a then-existing state court order, the plaintiffs' failure to stress *Velez* is understandable, and there is no need to posit bad faith. That order having been vacated, the issue of nonexistent or late notice does indeed "take[] on new importance." In any event, I find it inequitable to apply defendant's estoppel theory, which would require the Court to reach a result contrary to binding New Jersey Supreme Court precedent.

6

written notice be given to a public employee in the same manner as a public entity, it would have expressly done so when it amended N.J.S.A. 59:8–8. Again, it did not. Accordingly, the State's argument is better addressed to the Legislature.

Accordingly, under the NJTCA, it is sufficient for a plaintiff to send notice *only* to the public entity employing the defendant. *See Velez*, 180 N.J. at 296; *Cincerella v. Egg Harbor Twp. Police Dep't*, No. CIV 06-1183(RBK), 2009 WL 792489, at *13 (D.N.J. Mar. 23, 2009) ("When a plaintiff sues a public employee, it is sufficient to send a notice to the public entity that employs the defendant."); *Davis v. Twp. of Paulsboro*, 371 F. Supp. 2d 611, 619 (D.N.J. 2005) ("The [*Velez*] [c]ourt also found that notice for claims against a public employee need not be given directly to the individual employee, but only to the public entity.").

Similarly, notice need not specifically name the defendants, so long as it adequately describes them. *See, e.g., Ewing v. Cumberland Cty.*, 152 F. Supp. 3d 269, 298 (D.N.J. 2015) ("The communications made Defendants aware of an incident for which they could be liable and gave enough detail for them to begin investigations and to find the correctional officer … involved."); *Est. of Soberal v. City of Jersey City*, 529 F. Supp. 2d 477, 500 (D.N.J. 2007) ("Cases have held where plaintiffs have listed their attorney representation, the injuries sustained, and the date, time and place of the accident, and provided that information to the potential defendants in the matter, that was enough to meet the requirements of the statute."), *order vacated in part*, 334 F. App'x 492 (3d Cir. 2009); *Henderson v. Herman*, 373 N.J. Super. 625, 635 (N.J. Super. Ct. App. Div. 2004) ("[W]e do not consider it fatal to a claimants' right to proceed that the claimants identified the public employees in a descriptive manner[.]")

The parties do not dispute that the plaintiffs submitted a timely notice of claim pursuant to Section 59:8-8, albeit one which inadvertently named the wrong police officer. Despite this error, that notice of claim still includes the date and location of the incident, where the incident occurred, the injuries sustained by the plaintiffs, and the names of the plaintiffs' attorneys. (*See* DE

21-6.) That notice also describes the police officer involve. It alleges that (1) after the plaintiffs called the Jersey City Police Department, a police officer was sent to the scene; (2) while that officer remained in the police vehicle, the officer "instructed [Pagan] two separate times to go into the house to obtain certain documents for him to look at"; and (3) that the police officer remained in his vehicle even after Olivares requested that the officer assist Pagan. (DE 21-6.) The City, given its access to its own books and records, could easily ascertain the identity of the relevant officer.

The Court finds that the original notice of claim is sufficient to satisfy the requirements of the NJTCA. *See* N.J. Stat. Ann. § 59:8-4 (establishing the required contents for a notice of claim). Consistent with the purpose of the NJTCA, the plaintiffs' notice of claim provided the Jersey City Police Department with adequate notice of plaintiffs' injuries, the nature of the potential claims, and enough information to conduct its investigation. *See Mawhinney v. Bennett*, No. CIVA08CV3317NLHJS, 2010 WL 2557713, at *9 (D.N.J. June 22, 2010) ("By requiring notice ... the [NJTCA] still ensures that the public entity has 'an opportunity to investigate the claims, and take disciplinary or other appropriate action to rectify inappropriate behavior or flawed practices[.]") Therefore, Rivera's motion to dismiss the state-law tort claims is denied.

## III.   Conclusion

For the reasons set forth above, I will grant Rivera's motion (DE 64) to the extent of reconsidering the grounds for my April 29, 2020 Order and Opinion denying dismissal of the Plaintiffs' state-law tort claim for lack of pre-suit notice under the NJTCA. I will, however, deny Rivera's request that this Court vacate and reverse that prior order. An appropriate order follows.

Dated: December 10, 2021

/s/ Kevin McNulty

_____
**Kevin McNulty**
**United States District Judge**

8